Good morning, your honors. May it please the court. Kurt Hermanson on behalf of Mr. Lopez Montanez. In this case, a very experienced district attorney who was experienced enough to charge a special circumstance murder, and the judge misconstrued the burden when you have a duress defense in a felony murder case. So it's reasonably likely that the jury also misunderstood that burden. Mr. Montanez's trial attorney asked for the model jury instruction in Cal CRIM 3402. That model instruction includes a paragraph saying that the prosecution has the burden of disproving duress. Once the defendant brings forth substantial evidence of duress, as the trial judge in California Court of Appeal found Mr. Montanez did, the prosecution has the burden of disproving duress. But they deleted that paragraph. The prosecutor encouraged the trial judge to delete that paragraph, putting the burden on the prosecution, and the judge deleted that paragraph. And that's why we're here today. The California Court of Appeal found that was plain error. It was plain error to not tell the jury that the prosecution had the burden. And that plain error was exacerbated in this case by the prosecution's closing argument. In closing argument, the prosecutor said, To acquit based on duress, you must believe what Mr. Montanez is telling you. And I'll quote directly from what the prosecutor said. So for you to buy into duress, you first must believe what he's telling you. Second, you've got to swallow it whole to believe it. And third, and then you have to accept that the elements have been met. Well, you know, the prosecutor may not have gotten it 100% right, but your defense essentially was that your client didn't participate in the crime. So there were two defenses. One was that he was there, he was under duress, and didn't do anything other than pretend to rape the victim. Of course, his DNA was not found on her. Four men's DNA were found on her. His was not. But certainly the jury focused on – But that wasn't his – his primary defense was that he didn't participate at all, I thought. Isn't that what his primary defense was? The primary defense that his attorney argued in closing argument was that he didn't do anything wrong. Well, yeah, the whole case, what the primary defense was, was that he was just there, he didn't have anything to do with it at all, right? And he didn't rape her. Yes. And then a secondary sort of defense, which wasn't strong, but from what I can tell, was that, oh, and if I did it, it was sort of under duress because I was afraid of my brother. And certainly the jury credited that defense because they didn't find any of the special circumstances, and they asked on the third day of deliberations, they asked in jury note number five, what is the definition of duress? We can't find it. And once they were given the faulty definition, they then, on that third day of deliberations, found him guilty. I think you argue in your briefs that we should address your federal due process claim de novo, but aren't we at least required to give deference to the portion of the California Court of Appeals decision applying Chapman federal harmlessness standard? I'm trying to figure out how do we go around that, which is what I think you're trying to argue, at least in your briefs, for us to do. So the United States Supreme Court has addressed that issue in Ayala v. Davis, and they basically said that Brecht, they have said that Brecht subsumes that deference, 2254D. So the court need not apply the 2254D deference because Brecht includes that, the Brecht harmless error analysis. But in my brief, I do go through 2254D1 and D2, and especially D2. Under this court's, I think Taylor v. Maddox was en banc. In Taylor v. Maddox, this court talked about how you look at the court's unreasonable factual findings if they're not supported by the record. So how does that, what are you saying? What's the unreasonable factual findings here? So here, as this court said in Taylor v. Maddox, an unreasonable determination of the facts can be when, quote, the state court had before it yet apparently ignored evidence. And here, the state court had, their opinion is this very terse, one-sided statement saying that Duress was weak and ignored all the salient facts, or not all, but most of the salient facts that showed he wasn't, felt he was in imminent harm. But that almost was on invitation from trial counsel who spent, who went on and on making, trying to make the case that he wasn't involved, he didn't rape her, he was a bystander to this heinous crime. And, you know, we all understand that defense counsel is sometimes, not sometimes, frequently in difficult situations. But, you know, it would take a considerable amount of gymnastics to sell to the jury the notion that, well, he really wasn't involved, he didn't do anything, but if he did do something, it wasn't under Duress. I mean, that invites a jury to, you know, credibility issues. Well, Your Honor, he never denied being there. He was there. His DNA wasn't found on her. And he, the jury heard from him that, yes, he did get on top of her under threat. His older brother, the disciplinarian, who had beat him severely, who is a sereno, who is known to be violent, who had just before said that when he was encountered that same night with someone with a gun, he should have shot him. His brother, who was waving a gun around, told him repeatedly, take your turn. After two men had already raped the victim, he said, take your turn. He repeatedly said no and was trying to stand up to his brother. And then finally decided, well, to get on top of her and pretend. Counsel, Judge Gould, if I could interject a quick question. Assuming for sake of argument that he was under Duress and faking when he took his turn, to use that phrase, what other things did he do that might have aided or abetted the crime? In fact, you contend he didn't. But didn't he keep the other people occupied at the car while people were raping the woman? It's unclear. Well, there are four verdicts. There are four special verdicts, and all four of them are not true as to Mr. Montanez. So four times the jury found that he did not, as far as aiding, he did not aid and abet the murder for sodomy, rape, robbery. Any of the four special circumstances, they found all of them not true. So Steve, his older brother who caused the Duress, they found the special circumstances true for him. So it's unclear what they found his role to be. It could have been, as you say, Judge Gold, that he was there while the other two victims were tied up, and so his presence could have aided and abetted, but his attorney argued that that wasn't aiding and abetting. But didn't he? Did he have a gun? Steve had a gun, and two, he denied having a gun. No one said that he had a gun, but he was vicariously, he was punished for having a gun vicariously. But Duress requires proof that the defendant committed the crime, let me see here, under threats or menaces sufficient to show that he had reasonable cause to and did believe his life would be endangered if he refused. So, I mean, I take it the jury had that instruction, right? And although Mr. Montanez testified that he was scared of Steve and thought faking it was the only way to get out of the situation, I think the record also shows that Mr. Montanez never testified that he believed his life was in immediate danger if he did not do it as required to show Duress. He also, I think, admitted that despite his claim of being scared of Steve, he never tried to leave during the course of the day while they were there or also after driving around for hours and continued to associate with Steve. I mean, couldn't the jury have reasonably inferred that he wasn't under Duress because of that? Your Honor, I see my time is up. May I answer? Please, please. So, yes, I think under the false and misleading jury instruction, the jury would think he didn't prove it. And when the prosecutor said he has to prove Duress, all that's required is that he raise a reasonable doubt. So all he had to do under California law, Penal Code Section 26, is raise a reasonable doubt of whether he thought he was in imminent harm. It's true, Your Honor. He didn't say, I was sure or I thought if I didn't get on top of her and pretend to rape her that he would shoot me. And it's true he didn't say that he was pointing the gun right at me, but Steve was waving the gun around and he repeatedly told him, get your ass over here, repeatedly ordering him. Steve was ordering everyone to do things. And even later at the gas station, the gas station attendant was afraid of Steve. So without that long history that Mr. Montanez had, and he had a lifelong history of being afraid of Steve. Okay. I know you're out of time, but I just have one quick question I was going to ask you or the other counsel, maybe I'll ask both. The last reason decision that we're looking at is the California Court of Appeals, is that correct? It is, Your Honor. The California Supreme Court did a postcard denial, a summary denial, so this court would look under Yilts v. Nunnemaker, this court would look through to the Court of Appeal opinion. And there was no state court habeas decision, reasoned decision? No, Your Honor. Okay. Thank you. May it please the Court, Vincent LaPietra on behalf of the warden. The state court's harmlessness determination was a decision on the merits that is entitled to deference under IOLA. In this case, Mr. Montanez argues that the state court was unreasonable because it ignored facts. Well, let's talk about that before you go any further because the California Court of Appeal decision here never mentioned the federal due process claim or assumed federal error. So wouldn't that make this case distinguishable from Davis v. IOLA, where the state court explicitly mentioned the federal claim? No, Your Honor. The state courts are presumed to address federal claims and they are not required to explicitly state so. I believe that's under Johnson. Yeah, but they sort of reference. I mean, they're kind of in between. They didn't specifically state. They didn't specifically. They just referred to Chapman. They didn't say we're reviewing the federal claim, but they said they were reviewing the state claim under Chapman. It puts us in a little bit different posture here. Well, Your Honor, by referencing Chapman, that is an acknowledgment of the federal claim, and the state court's decision can be read as stating a violation under state law for failing to give that sentence of the instruction, which itself represents a deviation from the ordinary course of instructions, which can be a due process violation under Estelle if it misleads the jury. So by applying Chapman, they expressly acknowledged that there could be a due process violation here because there was a deviation from the ordinary course of instructions. Well, that's my whole question, I guess. Assuming we give the AEDPA deference to the California Court of Appeals, Chapman determination, shouldn't we address the merits of Montanez federal due process claim de novo because the California Court of Appeals clearly did not address the merits of the issue, right? They addressed the merits of a potential due process violation by discussing In order to reach the question of whether the United States Constitution compels that sentence, you would first have to determine under IALA that the Chapman analysis was unreasonable, and then you would proceed to a de novo analysis. And that's my question. Is this a little bit different from IALA, though? Because IALA, they specifically acknowledged the federal claim. I understand what you're saying, Your Honor. I believe it would be like an ineffective assistance of counsel claim under Strickland where there are two prongs, and if one prong is not satisfied, then there's no reason to address the second. And that's the exact same issue here. If the Chapman analysis is reasonable, there was no prejudice, then there's no reason to discuss whether or not the Constitution compels the sentence omitted. I'm sorry. Why wasn't Montanez entitled to have the jury assess his duress defense under a correct standard? He was, and he did. And as the state court explained, omission of the sentence did not mislead the jury. Well, it did. I mean, the burden shifting proof in an affirmative defense like this is, you know, it's not a trivial matter. I mean, it's one thing to have to prove it, but it's another thing for the state to have to disprove it. And, you know, you may not have believed his story. I may not have believed his story. But, you know, a jury could have but didn't have that opportunity. Yes, Your Honor. So as the state court explained and the district court agreed, the omitted sentence merely made explicit what the instructions otherwise indicated by implication. That is that the prosecution must prove his case beyond a reasonable doubt. As defense counsel emphasized during closing, the defendant had no burden of proving anything, and they said if he acted under duress, then he is not guilty. And that means that if, by implication, that means if the prosecution has not disproven that, then he would not be guilty. But the instructions, the duress instructions do require, as the court noted, an immediacy and life-threatening act, which was simply not present. Further, as the district court noted in its report and recommendation, and as Judge Gould indicated, there were multiple theories under which Mr. Montañez was guilty, aiding and abetting the robbery, participating in the robbery, aiding and abetting the rape. And here his only testimony regarding duress was his act of participating directly in the rape. But he did stand guard over the two male victims while others were, quote, taking their turn. And he did participate in binding the two male victims, going through their pockets, and robbing them. To the extent that Mr. Montañez relies on the special circumstance, I would note that the special circumstances require an intent to kill. And so it's easily explainable that while the jury found that he either directly participated in or aided and abetted the rape or robbery, he did not have the intent for Ms. Attegg to die, and therefore returned not true findings on the special circumstances. Counsel, Judge Gould, if I could interject two quick questions. The first is I think what you were just saying, that a person does not need to have an intent to kill to be liable for aiding and abetting. Yes, Your Honor, that's correct. And the second is just a matter of curiosity, because the allegations here are a little beyond my experience. Are there any reported cases, federal cases or state cases, where a person has been held to have raped another person under duress? I'm unfamiliar with any, Your Honor. I believe the issue here is slightly different because it's a felony murder, and he could have aided and abetted in the rape, and for that reason was guilty of the murder that happened in the course of the rape or robbery. So it's a little different, and I don't know off the top of my head about duress and rape particularly. Okay, thank you. The California Court of Appeal determined that the instructional error here was harmless beyond a reasonable doubt, right? Yes, Your Honor. So I'm just trying to figure out, because I think we have to decide whether that was reasonable, and how was this a reasonable determination where Mr. Montanez testified in support of his duress defense? He clearly presented sufficient evidence to shift the burden to the prosecution, and I guess what causes me some pause here is that the jury specifically asked about duress during their lengthy deliberations. Yes, Your Honor. Disproving duress isn't necessarily a function of calling a witness to give affirmative evidence. It can be done, as was here, through cross-examination and other evidence, such as the night shift manager at the gas station, who said that Mr. Montanez and his older brother were out, and it was Mr. Montanez who was calming down his older brother in the course of the events at the gas station. But on cross-examination, the prosecutor elicited admissions that, no, his brother never pointed the gun at him, no, he never directly threatened him. And indeed, as he told the police officer, he was resistant to the notion until he decided that it would be better to go along just to get his brother off his back. And so all of that evidence definitely refutes any notion that he was participating in the rape under duress. Again, that doesn't cover aiding and abetting the rape or the robbery or aiding and abetting the robbery. For those reasons, the state court's determination was reasonable. The district court properly conducted a bright analysis and agreed, and this court should affirm the judgment. Do I see any questions? Thank you.  Thank you, Your Honor. Your Honor, Judge McGee, I wanted to direct your attention to regarding your question on Chapman. The fact that the California Court of Appeal applied Chapman, I would respectfully disagree with my friend. The AG is arguing that that's an indication that they were looking at due process and Estelle and the federal, but this is what the California Court of Appeal actually said. As the trial court failed to fulfill its instructional duty, it plainly erred. Instructional errors, including misdescriptions, omissions, or presumptions, are generally reviewed under the harmless beyond a reasonable doubt standard of Chapman. That's why the California Court of Appeal applied Chapman. They applied Chapman to instructional errors, serious instructional errors. But the California Court of Appeal did not go on to talk about due process or Estelle, so it is silent in that regard. Well, you don't get to Chapman unless you go through due process. Well, California has two different standards, Watson and Chapman. Watson is if there's, like, evidentiary errors, and Chapman is for errors including instructional errors. So in California, that's how California applies it. Well, I mean, don't we have to reject the petition, regardless of the merits of the due process claim, if we uphold the state court's harmlessness determination, because that would necessarily mean that Montanez has failed to show actual prejudice. Right. Montanez needs to show prejudice, and for that, it's simply if this court has grave doubt or is in equipoise about whether or not the jury was reasonably likely that the jury misconstrued the burden. If this court— I'm sorry, misconstrued what? Misconstrued the burden of duress. If this jury, as misdirected, thought, well, he didn't prove it, prosecutor said he had to prove it, he didn't prove it, then if this court has—and if that's reasonably likely, then that's prejudice under breadth. But for that, I mean, the California Court of Appeals, the way I understand it, held the trial court's error, and it admitted it was error, in refusing to instruct on the burden regarding duress was harmless. And then so we look at the reasons that they provided and whether or not they are reasonable, and one of the reasons they gave was the instructions gave the jury enough guidance to understand the burden and that Montanez's duress defense was weak. So I guess before you conclude, what is your best argument or case as to why this determination was objectively unreasonable? The best case is Taylor v. Maddox. When this court looks at the California Court of Appeals decision and sees that there are very few facts that it's actually looking at, and when you look at the briefs in this case and the briefs that were filed in the state court, there's a litany of—the totality of circumstances would support the duress defense, but the California Court of Appeals didn't look at those. So that, under Taylor v. Maddox, the state court had before it, yet apparently ignored evidence that supports the claim. All right. Thank you very much. Thank you both. Thank you, Mr. Hermanson, and then also Mr. LaPietra. I appreciate your arguments presented here today. The case of Eddie Lopez-Montanez v. Jeffrey A. Beard and Javier Becerra is now submitted.
judges: Parker, Gould, Murguia